673 So.2d 929 (1996)
Robert A. HEWITT, Jr., Appellant,
v.
D. Lorraine J. TAFFEE, Appellee.
No. 95-1806.
District Court of Appeal of Florida, Fifth District.
May 17, 1996.
*930 Charles M. Greene and Lavinia K. Dierking of Cabaniss & Burke, P.A., Orlando, for Appellant.
Neal J. Blaher, Orlando, for Appellee.
GOSHORN, Judge.
Robert Hewitt ("Hewitt"), a California resident, appeals from the trial court's non-final order denying his motion to dismiss for lack of personal jurisdiction arising out of a lawsuit Lorraine Taffee ("Taffee") brought against him in Orange County, Florida.[1] Hewitt contends that the trial court erred in finding that it had in personam jurisdiction over him. We agree and reverse.
Taffee filed a four-count complaint against Hewitt, alleging breach of fiduciary duty, fraud and misrepresentation, negligence and gross negligence, and breach of contract. Taffee contended that these acts arose out of Hewitt's investment recommendations to her as her financial advisor. Hewitt moved to dismiss the complaint for lack of jurisdiction.[2] As support, he attached his sworn affidavit stating that he did not, nor had he ever (1) resided in Florida, (2) maintained an office in Florida, (3) operated a business in Florida, (4) owned real property in Florida, (5) maintained a bank account in Florida, (6) retained a telephone in Florida, or (7) kept a post office box or otherwise received mail in Florida. With regard to his dealings with Taffee, Hewitt explained as follows:
9. In 1977, I met Lorraine J. Taffee in Jacksonville, Florida. During that meeting the only time I ever met with Ms. *931 Taffee in Floridashe informed me that she was moving to Virginia and we discussed the possibility of my handling her financial affairs after she moved to Virginia.
10. In 1977, I was not licensed in Florida and I did not do any business here. I agreed to assist Ms. Taffee because she was moving to Virginia where I had other clients and where I traveled periodically. I would not have agreed to assist Mrs. Taffee with her financial affairs had she not moved from Florida because I had no ongoing business affairs in Florida.
11. After our meeting in 1977, I sent Ms. Taffee a proposed financial plan. The plan contemplated her immediate move to Virginia. The primary focus of the plan was to facilitate the purchase of the Virginia home. The intent underlying the plan was to invest any excess funds Ms. Taffee retained after buying a home in Virginia. I did [not] make any investments or enter into any other transactions with Ms. Taffee while she resided in Florida, nor did we ever intend to do so.
12. After she moved to Virginia in early 1978, I began making investments on Ms. Taffee's behalf. My first investment on her behalf was in October of 1978nearly a year after I had sent her the proposed plan. All of the investments I handled on Ms. Taffee's behalf were made after she moved to Virginia.
13. I never entered into any contracts with Ms. Taffee in the State of Florida, either oral or written, that required the performance of any acts in Florida. The only agreement I had with Ms. Taffee in Florida was to draft a proposed financial plan to be implemented after she moved from Florida. This plan was not implemented in Florida and it was supplemented and revised many times over the ensuing years after Ms. Taffee moved from Florida.
14. In approximately 1990, Plaintiff returned to Florida. After she returned to Florida, I corresponded with her only on two or three occasions. All of my correspondence was related to her inquiries concerning past investments I made on her behalf outside of Florida and while she was not a resident of Florida.
15. In the past few years, three clients whose investments I have handled for many years moved to Florida. Because these long time clients requested that I continued to handle their investments, I became licensed in Florida in approximately 1988. I handle the investments of my clients from my offices in California. My contacts with them are infrequent and not on a continuous or regular basis.
Thereafter, Taffee filed an affidavit in opposition to Hewitt's motion to dismiss. Taffee stated that Hewitt traveled to Florida to conduct a seminar for military personnel, and that Taffee's friends, who were Florida residents, did business with Hewitt from 1977 to 1982. Further, Taffee alleged that Hewitt sent a financial plan to her at her Florida residence that referenced the limited partnership that she eventually purchased and is the basis for her lawsuit against Hewitt. Finally, Taffee stated that after she moved back to Florida, Hewitt sent her documents showing some of the transactions he had executed on Taffee's behalf, and that Hewitt continued to be her financial advisor after she had moved back to Florida in 1990.
The trial court deferred ruling on the motion to dismiss until the parties performed additional discovery and an evidentiary hearing was held. At the hearing, Taffee testified that in September of 1977, she and approximately 12 to 20 others had attended an investment seminar that Hewitt had held for Navy families. Following the one to two hour long seminar, Taffee spoke with Hewitt, and the two went to dinner to discuss her financial planning. After dinner, they proceeded to Taffee's home for further discussions. Although she gave Hewitt no money nor did she sign any documents, Taffee testified that, following a handshake in her dining room, she felt that she and Hewitt had entered into a binding contract for Hewitt to be her financial advisor. After their meeting, Hewitt assembled a financial plan for Taffee *932 and sent it to her residence in Jacksonville.[3] Thereafter, in early 1978, Taffee moved to Virginia. It was not until after Taffee had resided in Virginia for eight months that she actually made her first investment through Hewitt.
In Grogan v. Archer, 669 So.2d 289 (Fla. 5th DCA 1996), we set forth the appropriate inquiry for courts to make when evaluating whether a litigant is subject to jurisdiction in Florida by way of its long arm statute:
When analyzing whether long arm jurisdiction is appropriate, two inquiries must be made. First, the complaint must allege sufficient jurisdictional facts to bring the action within the ambit of section 48.193, Florida Statutes (1993), Florida's long arm statute. Second, assuming the first criteria has been met, the defendant must possess certain minimum contacts with the state so as to justify him being subject to suit in that state, Strickland Ins. Group v. Shewmake, 642 So.2d 1159, 1160-61 (Fla. 5th DCA 1994). These minimum contacts must exist so as to satisfy the "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278, 283 (1940), reh'g denied, 312 U.S. 712, 61 S.Ct. 548, 85 L.Ed. 1143 (1941)).
However, the filing of a motion to dismiss on grounds of lack of personal jurisdiction over the person only raises the legal sufficiency of the pleadings. Wartski v. Sencer, 615 So.2d 794, 796 (Fla. 5th DCA 1993); Elmex Corp. v. Atlantic Fed. Sav. & Loan Ass'n, 325 So.2d 58, 62 (Fla. 1st DCA 1976). A defendant desiring to contest the allegations of the complaint or wanting to raise a contention of lack of minimum contacts must file supporting affidavits. Venetian Salami v. Parthenais, 554 So.2d 499, 502 (Fla.1989). The burden then shifts to the plaintiff to prove, by affidavit, the basis upon which jurisdiction may be obtained. If the essential facts stated in the parties' affidavits are not conflicting, the trial court can resolve the legal issue on the basis of the affidavits. If, however, the essential facts are shown to be in direct conflict, the trial court must hold an evidentiary hearing to resolve all disputed facts essential to determining the jurisdictional issue. Id. at 502-03.
Id. at 292.
In the present case, Taffee filed an unsworn complaint that never mentioned how Florida possessed jurisdiction over Hewitt. It did not even make reference to jurisdiction, much less section 48.193; it merely stated that Taffee was a Florida resident and that Hewitt was "an individual and financial advisor residing in or around Monterey, California." In the body of the complaint, Taffee alleged that Hewitt had held an investment seminar and that as a result of that meeting, she had hired Hewitt as her financial advisor, but she never mentioned in what state that meeting was held. Taffee contended that she never would have purchased the bad investments if it was not for Hewitt's misrepresentations and material omissions, but again, she never claimed that Hewitt's conduct occurred in Florida. Regarding Taffee's breach of contract action, Taffee alleged that Hewitt entered into an oral agreement whereby Hewitt agreed to properly handle Taffee's financial affairs, and failed to do so. Once again, Taffee never alleged that this agreement was either made or breached in Florida. As such, we find that the complaint was subject to dismissal and that the trial court should have granted Hewitt's motion to dismiss without prejudice for Taffee to file an amended complaint including the basis upon which she attempted to establish personal jurisdiction. Compare Orbe v. Orbe, 651 So.2d 1295, 1298 (Fla. 5th DCA 1995) (finding that wife's challenge to subject matter jurisdiction through a motion to dismiss, unsupported by an adequate affidavit, was insufficient to support a pre-trial evidentiary hearing and stating that the lower court should have, at the most, granted *933 the motion to dismiss without prejudice, for the husband to file an amended complaint properly alleging subject matter jurisdiction).[4]
Where plaintiffs have alleged insufficient facts to establish jurisdiction and the court has ruled prior to an evidentiary hearing, appellate courts have reversed and remanded for the trial court to permit the plaintiff to amend. See Pluess-Staufer Indus. v. Rollason Eng'g & Mfg., 597 So.2d 957, 958 (Fla. 5th DCA), review denied, 606 So.2d 1166 (Fla.1992). In other circumstances, where there were conflicting affidavits on the issue of personal jurisdiction, courts have reversed and remanded for an evidentiary hearing on the issue of jurisdiction. See John Posey Corp. v. R.J.T. Eng'g, Inc., 617 So.2d 441, 443-44 (Fla. 5th DCA 1993). Because of the unique procedural history of this case, remand for Taffee to amend her complaint would be futile because the facts surrounding her basis for jurisdiction surfaced at the evidentiary hearing on March 27, 1995. We therefore have elected to examine the substantive issue of whether Hewitt is subject to jurisdiction in Florida by way of the long arm statute.
In doing so, we find that Hewitt's actions do not come within paragraphs 48.193(1)(b) or (g), contrary to Taffee's contentions. See Thompson v. Doe, 596 So.2d 1178, 1180 (Fla. 5th DCA 1992), approved, 620 So.2d 1004 (Fla.1993); Phillips v. Orange Co., Inc., 522 So.2d 64 (Fla. 2d DCA), review denied, 531 So.2d 1354 (Fla.1988); see also Pluess-Staufer Indus., 635 So.2d at 1072 (stating that where defendant engaged in negotiations in Florida which resulted in the execution of an agreement in Florida, personal jurisdiction was improper under paragraph 48.193(1)(g) because the "execution of a contract in Florida by a nonresident, standing alone, is insufficient to confer jurisdiction under the long-arm statute"); Holton v. Prosperity Bank, 602 So.2d 659, 662 (Fla. 5th DCA 1992) (stating that even if defendant was required to honor another's payment obligation in Florida, that activity alone is not substantial enough to confer jurisdiction pursuant to paragraph 48.193(1)(g)); cf. Cosmopolitan Health Spa, Inc. v. Health Indus., Inc., 362 So.2d 367, 368 (Fla. 4th DCA 1978) (stating that "before in personam jurisdiction may attach over a defendant, proper allegations must be pled to show that the defendant failed to perform an act or acts whose performance was to be in Florida and that such breach formed the basis for the cause of action for which relief is sought by the plaintiff.") (citations omitted). Accordingly, we hold that the trial court erred in finding that it possessed personal jurisdiction of Hewitt. Because of this conclusion, we decline to address the issue of minimum contacts, as it is moot.
REVERSED.
DAUKSCH and THOMPSON, JJ., concur.
NOTES
[1] We have jurisdiction. See Fla.R.App.P. 9.130(a)(3)(C)(i).
[2] Originally, Hewitt removed the action to federal court, where he filed his first motion to dismiss. The federal court remanded the cause to Orange County Circuit Court after it determined that the amount in controversy was insufficient to support federal jurisdiction.
[3] This document was not signed by Taffee because, as Taffee testified, "[t]here was no place to sign it."
[4] In addition, we find that Taffee failed to meet her burden of proving, by counter affidavit, that Hewitt was subject to jurisdiction in Florida. Although Taffee claimed that Hewitt is subject to jurisdiction in Florida by way of paragraph 48.193(1)(b) and (g) because he allegedly committed torts in Florida and breached a contract in Florida, Taffee's affidavit fails to allege that Hewitt performed such acts. While Taffee's affidavit arguably attempts to contest the statement in Hewitt's affidavit that Hewitt had no ongoing business in Florida by indicating that Hewitt did, in fact, engage in business in Florida, at no time did Taffee assert that Hewitt should be subjected to general jurisdiction in Florida because of continuous and substantial business activity in Florida, see § 48.193(2), Fla.Stat. (1993), nor did she claim that Hewitt should be subjected to jurisdiction in Florida by way of paragraph 48.193(1)(a), for conducting or engaging in business in Florida.